UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:25-cv-25648-KMW-EAL

**CELEBRITY CRUISES, INC. and**
**ROYAL CARIBBEAN CRUISES LTD.,**
**d/b/a ROYAL CARIBBEAN GROUP**,

      Plaintiffs,

v.

**ANGEL CHRISTOPHER GOMEZ**,

      Defendant.

_____/

### [PROPOSED] TEMPORARY RESTRAINING ORDER

THIS MATTER comes before the Court upon the Plaintiffs' Expedited Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction (the "Motion") and the Court having reviewed and weighed the evidence, the Motion, exhibit, and related filings, including the Verified Complaint (Doc. 1-1) and exhibits, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED as follows:

    1.    Plaintiffs Celebrity Cruises Inc. ("Celebrity") and Royal Caribbean Cruises Ltd. d/b/a Royal Caribbean Group ("Royal Caribbean") (collectively, "Plaintiffs") have satisfied the requirements for temporary injunctive relief under Fed. R. Civ. P. 65.

    2.    Plaintiffs have shown a substantial likelihood of success on the merits of their breach of contract claims in Counts I, II, and III of the Verified Complaint.

    3.    Defendant's multiple agreements[1] with Plaintiffs are governed by Florida law and are enforceable contracts under Fla. Stat. § 542.335, supported by legitimate business interests, including Defendant's access to Plaintiffs' confidential information and trade secrets and Defendant's substantial employee and trade relationships.

---

[1] *See* Compl., Exs. A-K (referred to herein as the "Agreements").

4. The restrictions in the Restricted Stock Unit (RSU) Agreements[2] are reasonable in time and scope.

    a. The restricted period is nine (9) months post-employment with Plaintiffs, which this Court finds reasonable.[3]

    b. The non-competition provisions apply to companies engaged or preparing to engage in cruising[4] with a minimum fleet size of 500 berths, or cruise-related business of any such entities, which this Court finds reasonable.[5]

    c. The non-solicitation provisions apply to (i) current employees and individuals who were employed by Plaintiffs at any time within the six (6) month period prior to Defendant's last day of employment and (ii) customers or any other person or entity that has a business relationship with Plaintiffs at any time during the nine-month restricted period.[6]

5. The restrictions in the Defendant's 2018 and 2022 Non-Compete Agreements[7] are also reasonable in time and scope. The restricted period is nine (9) months, the non-competition restriction is appropriately limited to cruise companies with a fleet size of 500 berths[8], the non-solicitation restrictions are limited to (i) current employees and individuals who were employed by Plaintiffs at any time within the nine (9) month period prior to Defendant's last day of employment and (ii) any customers or any other person or entity that has a business relationship with Plaintiffs at any time during the nine-month restricted period. *See* Compl., Exs. A-B.

6. For purposes of this Motion and the request for a TRO, the Court will rely upon the 2022 Non-Compete Agreement and the 2025 RSU Agreement.

---

[2] *See* Compl., Exs. C-K, Schedule A.
[3] While the 2016 and 2017 RSU Agreements contain restrictive covenants lasting six months post-employment, the other Agreements have restrictive covenants with a nine-month duration. *Compare* Compl., Exs. C-D, Schedule A *with* Compl., Exs. E-K.
[4] Only the 2024 RSU Agreement and 2025 RSU Agreement non-competition provisions contain the "preparing to engage in" language. *See* Compl., Exs. J-K, Schedule A.
[5] While the 2018 Non-Compete Agreement has a 1,000 berth limitation, the other Agreements contain a 500-berth limitation. *Compare* Compl., Ex. A *with* Compl., B-K. A "berth" on a ship is a sleeping space or space to sleep. For example, a room that sleeps four people is equivalent to four berths. In the cruise industry, the number of passengers accommodated on a ship is equivalent to the number of berths. Compl. fn. 1.
[6] Compl., Exs. C-K, Schedule A.
[7] Compl., Exs. A-B.
[8] The 2018 Non-Compete Agreement has a 1,000 berth limitation. Compl., Ex. A.

2

7. Plaintiffs are substantially likely to succeed on their claims for violation of the non-compete provisions in the 2022 Non-Compete Agreement and the 2025 RSU Agreement because AmaWaterways is a cruise company with a fleet size of more than 500 berths (Compl., ¶ 84),[9] andDefendant is working for AmaWaterways as SVP Global Consumer Sales and Service. Compl., ¶¶ 4, 83-87

8. Plaintiffs are substantially likely to succeed on their claims for violation of the non-solicitation provisions in the 2022 Non-Compete Agreement and the 2025 RSU Agreement because Defendant has solicited and attempted to recruit at least one current employee of Plaintiffs. *See* Motion, Ex. A; Compl., ¶ 6, 89.

9. Should Defendant continue to engage in conduct in violation of his restrictive covenants, Plaintiffs will be irreparably harmed, and there is an imminent threat of disclosure (or further disclosure) of Plaintiffs' confidential information and/or proprietary information and trade secrets. This is further supported by Defendant's actions detailed in the forensic consultant's declaration attached to the Verified Complaint as Exhibit L.

10. Defendant's breaches of his contractual obligations and actual or threatened disclosure of confidential information and/or proprietary information and trade secrets give rise to a presumption of irreparable harm, which Defendant cannot rebut. *Mainsail Parent, LLC v. Jewell*, 2024 U.S. Dist. LEXIS 187698, at *11-12 (S.D. Fla. July 31, 2024) ("Florida law presumes irreparable harm in cases involving violations of employment agreement provisions regarding trade secrets, customer lists, or direct solicitation of existing customers.").

11. The harm to Plaintiffs outweighs any potential harm to Defendant, and, in any event, under Florida law, the Court "[s]hall not not consider any individualized economic or other hardship that might be caused to the person against whom enforcement is sought." Fla. Stat. § 542.335(1)(g). As set forth above, Plaintiffs will be irreparably harmed by Defendant's continued violations of his obligations to Plaintiffs. Defendant will not be harmed by being held to bargained-for terms of the Agreements. *Transunion Risk & Alt. Data Sols., Inc. v. Maclachlan*, 2015 U.S.

---

[9] To the extent Defendant argues that he has not violated his non-compete obligations because his new employer specializes in river cruising and not ocean cruising, the Court rejects this argument based on the express language contained in the Agreements. The non-compete language in the Agreements applies to any entity "engaged in cruises" and does not differentiate between types of cruises. Rather, the restriction is based on fleet size (500 berths), and AmaWaterways has a fleet size greater than 500 berths. Compl., ¶ 84. Nonetheless, Celebrity sells ocean and river cruises.

Dist. LEXIS 190948, at *7 (S.D. Fla. Oct. 29, 2015) ("In the context of non-competition agreements and in other contexts, courts have held that enjoinment from something that one has no right to is not a hardship").

12. The issuance of injunctive relief will serve the public interest in the protection of trade secrets, confidential information, goodwill, customer, and employee relationships and the enforcement of reasonable contracts. *See Autonation, Inc. v. Mulleavey*, 2019 U.S. Dist. LEXIS 170466, at *15 (S.D. Fla. Aug. 22, 2019) ("The Florida Legislature has determined that injunctions to protect trade secrets and restrictive covenants serve the public interest . . . .").

13. For the foregoing reasons, a temporary restraining order is GRANTED pending a hearing on a preliminary injunction.

IT IS, THEREFORE, ORDERED that Defendant is temporarily RESTRAINED, as follows:

A. For a period of nine (9) months from the date of this Order, Defendant and anyone acting in concert with him shall not, directly or indirectly, be employed by or provide services, in any capacity, to any other entity engaged in cruises with a minimum fleet size of 500 berths, including, without limitation, AmaWaterways.

B. For a period of nine (9) months from the date of this Order, Defendant and anyone acting in concert with him shall not (i) employ or seek to employ anyone employed by either of Plaintiffs or who was employed within the last six (6) months of Defendant's employment, or (ii) solicit, induce, or influence anyone employed by Plaintiffs to discontinue, reduce, or modify their relationship with Royal Caribbean or its subsidiaries, including Celebrity.

C. For a period of nine (9) months from the date of this Order, Defendant and anyone acting in concert with him shall not directly or indirectly solicit, induce, or influence any proprietor, partner, stockholder, lender, director, officer, employee, joint venturer, investor, consultant, agent, lessor, supplier, customer or any other person or entity that has a business relationship with Plaintiffs or their affiliates to discontinue or reduce or modify the extent of such relationship with Royal Caribbean or any of its subsidiaries, including Celebrity.

D. Defendant and anyone acting in concert with him shall not directly or indirectly use, disclose, or otherwise misappropriate any of Plaintiffs' Confidential Information or trade secrets. For purposes of this Order, "Confidential Information" is defined as set forth in Section 1(A) of the parties' 2022 Non-Compete Agreement, and includes, but is not limited to,

information, observations, procedures, practices, and data, whether written or oral, regarding any of the business, operations or affairs of the Company, its subsidiaries and its affiliates, including, by way of example, strategies, planning, research, developments, product designs or specifications, manufacturing processes, "know-how," prices, suppliers, customers, costs, workflows, software, developments, inventions, formulas, technology, designs, drawings, engineering plans, hardware configuration information, and any knowledge or information with respect to confidential or trade secrets of Royal Caribbean, its subsidiaries and affiliates, including Celebrity, or any information that a reasonable person would conclude is intended to remain confidential due to its nature or the circumstances under which it was learned.

      E.     Defendant shall preserve all documents, electronically stored information, and other information potentially relevant to the factual allegations and claims contained within the Verified Complaint, including, without limitation, any documents (hard copy or electronic) containing Plaintiffs' information; any files that were transferred from or originated from any of Plaintiffs' devices or systems; and any communications (including, without limitation, text messages, WhatsApp messages, and emails) with any of Plaintiffs' current or former employees, current or former customers, potential customers, vendors, or partners, whether stored on personal electronic devices (such as cellular phones, tablets, or laptops) or in email or other cloud storage accounts.

      F.     Defendant shall return all copies of all of Plaintiffs' documents in his possession, custody, or control, and submit to a forensic examination of Defendant's devices (including personal laptops, cell phones, USB devices, and tablets) and accounts (including email and cloud storage accounts, such as Google Drive). Defendant shall, at Defendant's expense: (i) stipulate to and agree with Plaintiffs on a non-party forensic vendor; (ii) jointly with Plaintiffs, submit to the Court a forensic protocol to accomplish the return and remediation of Plaintiffs' documents from the Defendant's possession (i.e., to permanently remove the documents from the Defendant's possession), and disclosure of communications that are potentially relevant to the factual allegations and claims contained within the Verified Complaint, with Defendant bearing all costs of the return and remediation; and (iii) submit sworn declarations from Defendant and the non-party forensic vendor attesting to the return and remediation of all of Plaintiffs' documents and potentially relevant communications.

      G.      Under Fed. R. Civ. P. 65(c), Plaintiffs shall deposit a bond in the amount of $_____ within 14 days of this Order.

      H.      A hearing on Plaintiffs' Motion for a Preliminary Injunction shall be set for _____, 2025, at _____ \_\_.

ORDERED this \_\_\_\_ day of December, 2025.

                                                   _____
                                                    HON. KATHLEEN M. WILLIAMS, U.S.D.J.