UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-CV-25648-WILLIAMS/LETT

CELEBRITY CRUISES, INC. and
ROYAL CARIBBEAN CRUISES, LTD.
d/b/a ROYAL CARIBBEAN GROUP,

      Plaintiff,
v.

ANGEL CHRISTOPHER GOMEZ,

      Defendant.
_____/

## AMENDED ANSWER AND AFFIRMATIVE DEFENSES

      Defendant, Angel Christopher Gomez, through his undersigned counsel, responds to the Verified Complaint For Injunctive Relief And Damages [ECF No. 1-1] with the following Amended Answer and Affirmative Defenses as follows:

      1.      Defendant admits the allegations in ¶1 that he worked for Celebrity Cruises Inc. for nearly 18 years as a devoted employee who resigned due to a toxic, discriminatory work environment, but denies the remaining allegations in ¶1.

      2.      Defendant admits the allegations in ¶2 that he signed one or more agreements that contain provisions containing restrictive covenants, but denies that Plaintiffs can enforce the restrictions, that he violated them, and the remaining allegations in ¶2.

      3.      Defendant admits the allegations in ¶3 that he resigned in May 2025 and advised Ann Neal, Director, Associate Counsel at Royal Caribbean, why he resigned, but denies the remaining allegations in ¶3.

1

4.      Defendant admits the allegations in ¶4 that AmaWaterways, an established river cruise line, announced his appointment as its Senior Vice President of Global Consumer Sales and Service, but denies the remaining allegations in ¶4.

5.      Defendant denies the allegations in ¶5.

6.      Defendant admits the allegations in ¶6 that he has been in contact with one or more of Plaintiffs' employees but denies that he did so to induce any of them to leave Plaintiffs and join him in working at AmaWaterways, that he breached any of his contractual duties, and the remaining allegations in ¶6.

7.      Defendant denies the allegations in ¶7.

## THE PARTIES

8.      Defendant admits the allegations in ¶8.

9.      Defendant admits the allegations in ¶9.

10.      Defendant admits that he is over 18 but denies the remaining allegations in ¶10.

## JURISDICTION AND VENUE

11.      Defendant admits the allegations in ¶11 that the State and federal courts in Miami-Dade County have concurrent jurisdiction over this dispute and that Plaintiffs seek injunctive relief and damages exceeding $750,000, but denies they are entitled to any relief, damages, and the remaining allegations in ¶11.

12.      Defendant denies the allegations in ¶12.

13.      Defendant denies the allegations in ¶13.

14.      Defendant denies the allegations in ¶14.

15.      Defendant denies the remaining allegations in ¶15.

2

## FACTUAL ALLEGATIONS

### I.    Defendant's Employment with Plaintiffs.

16.    Defendant admits the allegations in ¶16.

17.    Defendant admits the allegations in ¶17 that Plaintiff, Celebrity Cruises, Inc., operated and was engaged in the ocean cruise business during his employment, but denies the remaining allegations in ¶17.

18.    Defendant admits the allegations in ¶18.

19.    Defendant admits the allegations in ¶19 that he was a hardworking, conscientious employee who dutifully performed the duties and tasks assigned to him, met or exceeded the expectations for the roles he occupied, and had an upward career trajectory based on his work ethic, integrity, intelligence, and perseverance, received training about and was privy to information involving the Plaintiffs' ocean cruise business, but denies the remaining allegations in ¶19.

20.    Defendant admits the allegations in ¶20.

21.    Defendant admits the allegations in ¶21.

22.    Defendant admits the allegations in ¶22.

23.    Defendant admits the allegations in ¶23.

24.    Defendant admits the allegations in ¶24.

25.    Defendant admits the allegations in ¶25 that he was promoted to Associated Vice President (AVP), Celebrity Guest Sales and Service, and that it was the first of two AVP roles he held, but denies that the 2018 Non-Compete Agreement is enforceable, prohibits him from working for an entity that is not engaged in the ocean cruise industry, prohibits him from working

3

for a company engaged in river cruising whose fleet does not contain a vessel with at least 1,000 berths, or that he engaged in any conduct violative of the 2018 Non-Compete Agreement, and the remaining allegations in ¶25.

26.    Defendant admits the allegations in ¶26 that he oversaw a business-to-business (indirect) sales call center for ocean cruises with over 400 employees.

27.    Defendant admits the allegations in ¶27 that he developed relationships with persons and entities related to the ocean cruise business for Celebrity, but denies the remaining allegations in ¶27.

28.    Defendant admits the allegations in ¶28 that he was exposed to and worked with information and processes, both generally and not generally/publicly known, as focused on the Plaintiffs' business involving the ocean cruise industry, but is without knowledge of and therefore denies the remaining allegations in ¶28.

29.    Defendant admits the allegations in ¶29 that he was exposed to and worked with information and processes, both generally and not generally/publicly known, as focused on the Plaintiffs' business involving the ocean cruise industry, but is without knowledge of and therefore denies the remaining allegations in ¶29.

30.    Defendant denies the allegations in ¶30.

31.    Defendant denies the allegations in ¶31.

32.    Defendant admits the allegations in ¶32 that he had access to information involving the sale of ocean cruises under Plaintiffs' brand, both generally and not generally/publicly known, but denies that he had access to, received, or reviewed non-public information regarding Plaintiffs' future entry in the river cruise market or the remaining allegations in ¶32.

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

33.    Defendant admits the allegations in ¶33 that he was exposed to and worked with key performance indicators ("KPIs") for its ocean cruise business and other information involving its ocean cruise business, but denies that he had access to, received, or reviewed non-public information regarding Plaintiffs' future entry in the river cruise market or the remaining allegations in ¶33.

34.    Defendant admits the allegations in ¶34 that he was a hardworking, conscientious employee who dutifully performed the duties and tasks assigned to him, met or exceeded the expectations for the roles he occupied, and had an upward career trajectory based on his work ethic, integrity, intelligence, and perseverance as and as a result was offered the role of AVP of Consumer Outreach in December 2022, but denies the remaining allegations in ¶34.

35.    Defendant admits the allegations in ¶35 that the compensation package offered in connection with the role of AVP of Consumer Outreach in December of 2022 included the items identified in ¶35.

36.    Defendant denies the allegations in ¶36.

37.    Defendant admits the allegations in ¶37 that his role as AVP of Consumer Outreach included overseeing a global workforce of over 400 employees involved in the sale of ocean cruises to consumers, but denies the remaining allegations in ¶37.

38.    Defendant admits the allegations in ¶38 that he was exposed to and worked with information and processes, both generally and not generally/publicly known, as focused on the Plaintiffs' business involving the ocean cruise industry, and that he was responsible for succeeding in his role through growing the sales of ocean cruises, but denies the remaining allegations in ¶38.

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

39.      Defendant admits the allegations in ¶39 that he was exposed to and worked with information and processes, both generally and not generally/publicly known, as focused on the Plaintiffs' business involving the ocean cruise industry, and that he succeeded in his role through the growth of sales of ocean cruises, but denies the remaining allegations in ¶39.

40.      Defendant admits the allegations in ¶40 that he participated in meetings in which strategies involving the ocean cruise industry and business strategies involving the ocean cruise industries were discussed, and that he was exposed to and worked with information and processes, both generally and not generally/publicly known, as focused on the Plaintiffs' business involving the ocean cruise industry, and that he succeeded in his role through the growth of sales of ocean cruises, but denies the remaining allegations in ¶40.

41.      Defendant admits the allegations in ¶41 that he participated in annual strategy meetings involving the ocean cruise market and attended a three-day off-site leadership meeting in July 2023 and which was also attended by Dondra Ritzenthaler, then President and CEO of Azamara Cruises (a direct competitor of the Plaintiffs) at which the ocean cruise industry and business strategies involving the ocean cruise industries were discussed, and that he was exposed to and worked with information and processes, both generally and not generally/publicly known, as focused on the Plaintiffs' business involving the ocean cruise industry, and that he was responsible for succeeding in his role through the growth of sales of ocean cruises, but denies the remaining allegations in ¶41.

42.      Defendant is without knowledge of and therefore denies the allegations in ¶42.

43.      Defendant admits the allegations in ¶43 that it has policies and procedures regarding confidential information, requires password protection, limits access to certain

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

information, and requires employees at certain levels to sign restrictive covenants, but states that Plaintiffs do not hold all employees to their restrictive covenants (including by permitting Laurentiu Davidoiu a/k/a Lorenzo Davidoiu to work for Fours Seasons Yachts almost immediately after he stopped working for Plaintiffs in 2023 and by permitting Carlos Jimenez to work for Virgin Voyages almost immediately after he stopped working for Plaintiffs in 2025), denies that Plaintiffs enforce their policies and/or procedures, that their restrictive covenants are enforceable or are enforceable as to him, or that he violated any enforceable restriction applicable to him, as well as the remaining allegations in ¶43.

44.     Defendant admits the allegations in ¶44 that he would be a valuable asset in any organization, but denies the remaining allegations in ¶44.

## II.   **Defendant Signed Multiple Restrictive Covenant Agreements as He Was Promoted into Leadership Roles and Offered Additional Compensation and Equity**

### A. *The 2016-2017 Restricted Stock Unit ("RSU") Agreements*

45.     Defendant admits the allegations in ¶45 that he was offered the annual stock grants between 2016 and 2025, and that Plaintiffs appended RSU Agreements to the Verified Complaint as Exhibits C through K, but denies that they are enforceable and the remaining allegations in ¶45.

46.     Defendant admits the allegations in ¶46 that he was offered the 2016 RSU Agreement appended to the Verified Complaint as Exhibit C, but denies the remaining allegations in ¶46.

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

47.     Defendant admits the allegations in ¶47 that he was offered the 2017 RSU Agreement appended to the Verified Complaint as Exhibit D, but denies the remaining allegations in ¶47.

48.     Defendant admits the allegations in ¶48 that Exhibits C and D of the Verified Complaint each contained a six-month "restrictive period" but denies that the restrictions contained therein are enforceable, that he engaged in any conduct violative of the 2016 RSU Agreement or the 2017 RSU Agreement, that they prohibit him from working for an entity that is not engaged in the ocean cruise industry, that they prohibit him from working for a company whose fleet does not contain a vessel with at least 1,000 berths, and the remaining allegations in ¶48.

49.     Defendant admits the allegations in ¶49 that Exhibits C and D of the Verified Complaint contained a six-month restrictive period but denies that the restrictions contained therein are enforceable, denies that he engaged in any conduct violative of the 2016 RSU Agreement or the 2017 RSU Agreement, and denies the remaining allegations in ¶49.

50.     Defendant admits the allegations in ¶50 that Exhibits C and D of the Verified Complaint contained language similar to that alleged but denies that the restriction is enforceable, prohibits him from working for an entity that is not engaged in the ocean cruise industry, prohibits him from working for a company whose fleet does not contain a vessel with at least 1,000 berths, that he engaged in any conduct violative of the 2016 RSU Agreement or the 2017 RSU Agreement, and the remaining allegations in ¶50.

**B.  The 2019-2025 RSU Agreements**

8

51.     Defendant admits the allegations in ¶51 that he was offered the 2019 RSU Agreement appended to the Verified Complaint as Exhibit E, but denies the remaining allegations in ¶51.

52.     Defendant admits the allegations in ¶52 that he was offered the 2020 RSU Agreement appended to the Verified Complaint as Exhibit F, but denies the remaining allegations in ¶52.

53.     Defendant admits the allegations in ¶53 that he was offered the 2021 RSU Agreement appended to the Verified Complaint as Exhibit ,G but denies remaining allegations in ¶53.

54.     Defendant admits the allegations in ¶54 that he was offered the 2022 RSU Agreement appended to the Verified Complaint as Exhibit H, but denies the remaining allegations in ¶54.

55.     Defendant admits the allegations in ¶55 that he was offered the 2023 RSU Agreement appended to the Verified Complaint as Exhibit I, but denies the remaining allegations in ¶55.

56.     Defendant admits the allegations in ¶56 that he was offered the 2024 RSU Agreement appended to the Verified Complaint as Exhibit J, but denies the remaining allegations in ¶56.

57.     Defendant admits the allegations in ¶57 that he was offered the 2025 RSU Agreement appended to the Verified Complaint as Exhibit K, but denies the remaining allegations in ¶57.

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

58.     Defendant admits the allegations in ¶58 that Exhibits E, F, G, H, I, J, and K of the Verified Complaint each contained a nine-month restrictive period but denies that the restrictions contained therein are enforceable, that he engaged in any conduct violative of the 2019 RSU Agreement, 2020 RSU Agreement, 2021 RSU Agreement, 20222 RSU Agreement, 2023 RSU Agreement, 2024 RSU Agreement, or 2025 RSU Agreement, prohibit him from working for an entity that is not engaged in the ocean cruise industry, prohibit him from working for a company whose fleet does not contain a vessel with at least 500 berths, and the remaining allegations in ¶58.

59.     Defendant refers to his response to ¶58 for his response to the allegations in ¶59.

60.     Defendant refers to his response to ¶58 for his response to the allegations in ¶60.

61.     Defendant refers to his response to ¶58 for his response to the allegations in ¶61.

62.     Defendant admits that Plaintiffs reproduced language from the 2024 RSU Agreement and the 2025 RSU Agreement (Exhibits J and K to the Verified Complaint) in ¶62.

63.     Defendant admits that Plaintiffs reproduced language Exhibits E, F, G, H, I, J, and K of the Verified Complaint in ¶63.

64.     Defendant admits that Plaintiffs reproduced language Exhibits E, F, G, H, I, J, and K of the Verified Complaint in ¶64.

65.     Defendant admits the allegations in ¶65 that he was awarded 5,059 RSUs, but is without knowledge of and therefore denies the remaining allegations in ¶65.

**C. The 2018 and 2022 Non-Compete Agreements**

66.     Defendant admits the allegations in ¶66 that he signed the 2018 Non-Compete Agreement appended to the Verified Complaint as Exhibit A and that it contained certain post-employment restrictions but denies that the restrictions are enforceable, that he engaged in any

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

conduct violative of the 2018 Non-Compete Agreement, that it precludes him from working for an entity that is not engaged in the ocean cruise industry, prohibits him from working for a company whose fleet does not contain a vessel with at least 1,000 berths, and the remaining allegations in ¶66.

67.     Defendant refers to his response to ¶66 for his response to ¶67.

68.     Defendant refers to his response to ¶66 for his response to ¶68.

69.     Defendant admits the allegations in ¶69 that he signed the 2022 Non-Compete Agreement appended to the Verified Complaint as Exhibit B and that it contained certain post-employment restrictions but denies that the restrictions are enforceable, that he engaged in any conduct violative of the 2022 Non-Compete Agreement, that it precludes him from working for an entity that is not engaged in the ocean cruise industry, prohibits him from working for a company whose fleet does not contain a vessel with at least 1,000 berths, and the remaining allegations in ¶69.

70.     Defendant refers to his response to ¶69 for his response to ¶70.

71.     Defendant refers to his response to ¶69 for his response to ¶71.

72.     Defendant refers to his response to ¶69 for his response to ¶72.

73.     Defendant admits that Plaintiffs quoted language from the 2022 Non-Compete Agreement appended to the Verified Complaint as Exhibit B in ¶73 but denies all remaining allegations in ¶73.

74.     Defendant admits that Plaintiffs quoted language from the 2022 Non-Compete Agreement appended to the Verified Complaint as Exhibit B in ¶74 but denies all remaining allegations in ¶¶74.

11

75.     Defendant admits that Plaintiffs quoted language from the 2022 Non-Compete Agreement appended to the Verified Complaint as Exhibit B in ¶75 but denies all remaining allegations in ¶75.

76.     Defendant denies the allegations in ¶76

## III.     Defendant Leaves Celebrity to Join Another Cruise Company and Solicits Royal Caribbean's Employee in Breach of Multiple Agreements with Royal Caribbean

77.     Defendant admits the allegations in ¶77 that his work situation became intolerable, that he resigned due to his intolerable work situation on or about April 28, 2025, and that his resignation was announced on May 26, 2025, but denies the remaining allegations in ¶77.

78.     Defendant denies the allegations in ¶78.

79.     Defendant admits the allegations in ¶79 that he continued using his best efforts and attention in his work after giving notice of his resignation from employment, but denies the remaining allegations in ¶79.

80.     Defendant admits the allegations in ¶80.

81.     Defendant denies the allegations in ¶81.

82.     Defendant is without knowledge of the allegations in ¶82 because it does not identify the restrictive covenants to which ¶82 refers and therefore denies them.

83.     Defendant admits the allegations in ¶83.

84.     Defendant admits the allegations in ¶84 that AmaWaterways is engaged in the river cruise business and that none of the vessels in its fleet have 500 or more berths, but denies the remaining allegations in ¶84.

85.     Defendant denies the allegations in ¶85.

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

86.     Defendant admits the allegations in ¶86 that the article identified at footnote 4 of the Verified Complaint stated that at AmaWaterways, "He will oversee global consumer sales, service and reservations operations to improve guest and travel advisor experience" as related to AmaWaterways' river cruise business, but denies that his role is the same or similar to the role he held while working for Plaintiffs, and the remaining allegations in ¶86.

87.     Defendant admits the allegations in ¶87 that the article identified at footnote 3 of the Verified Complaint stated that he "has overseen global sales and service operations and led initiatives to strengthen guest engagement and team development" as related to Plaintiffs' ocean cruise business, but denies the remaining allegations in ¶87.

88.     Defendant denies the allegations in ¶88.

89.     Defendant admits the allegations in ¶89 that he has contacted one or more persons who work or worked for Plaintiffs, but denies that he did so for the purpose of seeking to employ them at AmaWaterways, that he employs anyone at AmaWaterways, and the remaining allegations in ¶89.

90.     Defendant is without knowledge of the allegations in ¶90 about Plaintiffs' retention of FTI Consulting ("FTI") or the scope of the services to be provided, but states that the Plaintiffs had implemented security measures on his work laptop that prevented him from copying, downloading, or otherwise moving digital information stored on its SharePoint server to another location or device, making it impossible for him to download, transfer, or keep a copy of is confidential, proprietary, or trade secret information that was created or stored electronically,  that the files were alleged access during "regular" work hours, and further responds to the allegations contained therein as follows:

13

a.  Defendant admits the allegations in ¶90.a. that the Plaintiffs previously provided him with a Western Digital Passport external hard drive (MyPassport) device in connection with his employment and that the device was used solely for his work for the Plaintiffs, that he turned his laptop into Plaintiff's IT department in the spring of 2025 and is unaware of the work performed on it at that time, and that it is likely that the Western Digital Passport external hard drive (My Passport) device connected to his laptop was also likely owned and connected to his laptop by the Plaintiffs, but denies that he owns, used, or supplied a My Passport (or other portable hard drive) device to be connected to his work laptop, denies that he moved, copied, or downloaded any digital information without or by exceeding authorization, and is without knowledge of the remaining allegations in ¶90.a.

b.  Defendant admits the allegations in ¶90.b. that the Plaintiffs previously provided him with a Western Digital Passport external hard drive (MyPassport) device in connection with his employment and that the device was used solely for his work for the Plaintiffs, that he turned his laptop into Plaintiff's IT department in the spring of 2025 and is unaware of the work performed on it at that time, and that it is likely that the Western Digital Passport external hard drive (My Passport) device connected to his laptop was also likely owned and connected to his laptop by the Plaintiffs, and that he either accessed specific files for the work he customarily performed or did so at the request of his superiors, but denies that he owns, used, or supplied a My Passport (or other portable hard drive) device to be connected to his work laptop, denies that he moved, copied, or downloaded any digital information he should not have, or accessed any files without or by exceeding authorization, denies that the files he accessed related to the river cruise industry or market and the remaining allegations in ¶90.b.

14

c.     Defendant admits the allegations in ¶90.c. that he turned his laptop into Plaintiff's IT department in the spring of 2025 and is unaware of the work performed on it at that time and was later instructed and/or understood that he was to remove and/or wipe his personal data (such as personal account logins) from the work laptop before turning it in, but denies that he moved, copied, or downloaded any digital information without or by exceeding authorization, denies that he used Cleanmgr to "cover his tracks," and is without knowledge of the remaining allegations in ¶90.c.

d.     Defendant admits the allegations in ¶90.c. that he was instructed and/or understood that he was to remove and/or wipe his personal data (such as personal account logins) from the work laptop before turning it in, but denies that he moved, copied, or downloaded any digital information without or by exceeding authorization, denies that he used Cleanmgr to "cover his tracks," and is without knowledge of the remaining allegations in ¶90.d.

e.     Defendant admits the allegations in ¶90.e. that he was instructed and/or understood that he was to remove and/or wipe his personal data (such as his browsing history) from the work laptop before turning it in, but denies that he moved, copied, or downloaded any digital information without or by exceeding authorization, denies that he deleted his browsing history to "cover his tracks," and is without knowledge of the remaining allegations in ¶90.e.

f.     Defendant admits the allegations in ¶90.f. that he may have accessed his Google Drive because he was instructed and/or understood that he was to remove and/or wipe his personal data (such as personal account logins) from the work laptop before turning it in and so unlinked the account from the work laptop, but denies that he moved, copied, or downloaded

any digital information without or by exceeding authorization, and is without knowledge of the remaining allegations in ¶90.f.

g.      Defendant admits that if he interacted with the files identified in in ¶90.g., he did so for the work he customarily performed or at the request of his superiors but denies that he interacted with the files without or by exceeding authorization, and denies the remaining allegations in ¶90.g.

h.      Defendant is without knowledge of the allegations in ¶90.h.

91.     Defendant is unable to admit or deny the allegations at ¶91 because the Plaintiffs do not identify the three files purportedly accessed on April 11, 2025, and so denies them.

92.     Defendant is without knowledge of the allegations in ¶92 and so denies them.

93.     Defendant denies the allegations in ¶93.

94.     Defendant admits the allegations in ¶94 that anytime he accessed any of the three files identified therein, he did so in connection with his work for Plaintiffs but denies that he would have any use for the Frontier Agent List (identifying contact center agents at various locations), that the Q2 Leadership Catch Up is confidential or privileged (but rather public as having been displayed during Celebrity's Virtual Townhall), and the remaining allegations in ¶94.

95.     Defendant denies the allegations in ¶95.

96.     Defendant denies the allegations in ¶96.

97.     Defendant admits the allegations in ¶97 that anytime he accessed any of the three files identified, he did so in connection with his work for Plaintiffs, and that each pertains to Plaintiffs' ocean cruise business, but denies the remaining allegations in ¶97.

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

**CAUSES OF ACTION**

**COUNT I: BREACH OF CONTRACT – 2018 NON-COMPETE AGREEMENT**

98.     Defendant reincorporates his responses to ¶¶1-97 in response to ¶98.

99.     Defendant reincorporates his response to ¶66 in response to ¶97.

100.    Defendant denies the allegations in ¶100.

101.    Defendant denies the allegations in ¶101.

102.    Defendant denies the allegations in ¶102.

103.    Defendant denies the allegations in ¶103.

104.    Defendant reincorporates his response to ¶67 in response to ¶104.

105.    Defendant admits the allegations in ¶105 that he began employment with AmaWaterways, and that it is an entity engaged in river cruises, but denies that any vessel in the AmaWaterways fleet has over 1,000 berths, denies that it is in the same line of business as the Plaintiffs, and denies the remaining allegations in ¶105.

106.    Defendant reincorporates his response to ¶67 in response to ¶106.

107.    Defendant reincorporates his response to ¶67 in response to ¶107.

108.    Defendant denies the allegations in ¶108.

109.    Defendant denies the allegations in ¶109.

110.    Defendant denies the allegations in ¶110.

111.    Defendant denies the allegations in ¶111.

112.    Defendant denies the allegations in ¶112.

**COUNT II: BREACH OF CONTRACT – 2022 NON-COMPETE AGREEMENT**

113.    Defendant reincorporates his responses to ¶¶1-97 as his response to ¶113.

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

114.    Defendant reincorporates his response to ¶69 in response to ¶114.

115.    Defendant reincorporates his response to ¶69 in response to ¶115.

116.    Defendant denies the allegations in ¶116.

117.    Defendant denies the allegations in ¶117.

118.    Defendant denies the allegations in ¶118.

119.    Defendant reincorporates his response to ¶69 in response to ¶119.

120.    Defendant denies the allegations in ¶120.

121.    Defendant reincorporates his response to ¶69 in response to ¶121.

122.    Defendant denies the allegations in ¶122.

123.    Defendant denies the allegations in ¶123.

124.    Defendant denies the allegations in ¶124.

125.    Defendant denies the allegations in ¶125.

126.    Defendant denies the allegations in ¶126.

## COUNT III: BREACH OF CONTRACT – THE RSU AGREEMENTS

127.    Defendant reincorporates his responses to ¶¶1-97 as his response to ¶127.

128.    Defendant reincorporates his response to ¶¶48 and 58 in response to ¶128.

129.    Defendant denies the allegations in ¶129.

130.    Defendant denies the allegations in ¶130.

131.    Defendant denies the allegations in ¶131.

132.    Defendant admits the allegations in ¶132.

133.    Defendant admits the allegations in ¶133.

134.    Defendant reincorporates his response to ¶48 in response to ¶134.

18

135.    Defendant denies the allegations in ¶135.

136.    Defendant reincorporates his response to ¶48 in response to ¶136.

137.    Defendant denies the allegations in ¶137.

138.    Defendant admits the allegations in ¶138.

139.    Defendant admits the allegations in ¶139.

140.    Defendant admits the allegations in ¶140.

141.    Defendant admits the allegations in ¶141.

142.    Defendant admits the allegations in ¶142.

143.    Defendant admits the allegations in ¶143.

144.    Defendant admits the allegations in ¶144.

145.    Defendant reincorporates his response to ¶48 and 58 in response to ¶145.

146.    Defendant denies the allegations in ¶146.

147.    Defendant reincorporates his response to ¶48 and 58 in response to ¶147.

148.    Defendant denies the allegations in ¶148.

149.    Defendant denies the allegations in ¶149.

150.    Defendant denies the allegations in ¶150.

151.    Defendant denies the allegations in ¶151.

## COUNT IV: MISAPPROPRIATION OF CONFIDENTIAL INFORMATION AND TRADE SECRETS − VIOLATION OF THE FLORIDA UNIFORM TRADE SECRETS ACT

152.    Defendant reincorporates his responses to ¶¶1-97 as his response to ¶152.

153.    Defendant denies the allegations in ¶153.

154.    Defendant denies the allegations in ¶154.

19

155.    Defendant is without knowledge of the allegations in ¶155.

156.    Defendant is without knowledge of the allegations in ¶156.

157.    Defendant denies the allegations in ¶157.

158.    Defendant denies the allegations in ¶158.

159.    Defendant denies the allegations in ¶159.

160.    Defendant denies the allegations in ¶160.

161.    Defendant denies the allegations in ¶161.

162.    Defendant denies the allegations in ¶162.

Defendant, Angel Christopher Gomez, denies all allegations not specifically responded to above.

## AFFIRMATIVE DEFENSES

### *First Affirmative Defense*

Plaintiffs failed to state a claim for which relief can be granted, and as a result, their claims must be dismissed.

### *Second Affirmative Defense*

One or both Plaintiffs lack standing to enforce the agreements at issue in this lawsuit, as the agreements appended to the Verified Complaint as Exhibits A through K do not each include both Plaintiffs as contracting parties.

### *Third Affirmative Defense*

One or both Plaintiffs lack standing to enforce the agreements at issue in this lawsuit, as the agreements appended to the Verified Complaint as Exhibits A through K are not intended to benefit both Plaintiffs as contracting parties (if not specifically named therein).

20

### Fourth Affirmative Defense

Plaintiffs are not entitled to enforce the contracts and agreements appended to the Verified Complaint at Exhibits A through K because they first breached them before Defendant is alleged to have committed any breach. *See Benemerito & Flores, M.D.'s P.A. vs. Roche*, 751 So. 2d 91 (Fla. 4th DCA 1999); *Bradley v. Health Coal.*, 687 So. 2d 329, 333 (Fla. 3d DCA 1997); and *Cordis Corp. v. Prooslin*, 482 So. 2d 486 (Fla. 3d DCA 1986). Due to the doctrine of first breach and the lack of any clause indicating that the restrictive covenants were independent of any other covenants contained therein, Plaintiffs cannot enforce any restrictive covenant against Defendant.

### Fifth Affirmative Defense

Plaintiffs cannot enforce the restrictive covenants in Exhibits A through K of the Verified Complaint to prevent Defendant from working and/or soliciting its employees because they are overly broad, not necessary to protect an established or legitimate business interest, and are not reasonable in terms of time, area, or line of business. *But see* Fla. Stat. §542.335.

<u>Ocean Cruising vs. River Cruising</u>

The ocean cruise industry is separate and distinct from the river cruise industry. Each has different vessel types, configurations, construction standards, fuel use and requirements, and safety standards; ports; terminal infrastructure; operating conditions; customer profiles; and guest experiences. Ocean and river cruise operators target and serve different markets, consumer behaviors, guest profiles, and destinations.

**Ocean cruises.** Ocean cruise vessels are like floating cities: they are large, with hundreds to thousands of berths, have multiple decks above and below the waterline, contain interior cabins without windows, feature deep displacement hulls, are built to different specifications and

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

tolerances to handle larger ports, rougher seas, and more challenging conditions, and must strictly follow the International Convention for the Safety of Life at Sea (SOLAS "The main objective of the SOLAS Convention is to specify minimum standards for the construction, equipment and operation of ships, compatible with their safety." (https://www.imo.org/en/about/conventions/pages/international-convention-for-the-safety-of-life-at-sea-(solas),-1974.aspx). Ocean cruise lines, including Plaintiffs, are voluntary members of Cruise Lines International Association (CLIA), a voluntary trade association.

Ocean cruises operate in saltwater oceans and seas, dock at or anchor near seaports, involve longer leg journeys, and have dedicated terminal infrastructure. Ocean cruises focus on the ship and on-board resort experiences, group entertainment, and excursions through operators affiliated with the cruise company

**River cruises.** River cruise lines are typically members of the European River Cruise Association (IGRiverCruise). CLIA considers the "river cruise industry" a distinct segment of the overall cruise market (https://cruising.org/about-cruise-industry/river-cruising). CLIA's members include AmaWaterways, but not the Plaintiffs (https://www.igrivercruise.com/about). CLIA identifies distinguishing factors of the river cruise industry as not spending full days cruising between ports, including food, beverages, and excursions in the price, using smaller, more luxurious ships, and providing more immersive experiences. *Id.* River cruises utilize much smaller vessels, with hundreds of berths, and lack multiple decks below the waterline. They do not have interior cabins, feature shallow and flat hulls, and generally lack large-venue spaces. These vessels offer dining for a limited number of guests, are designed for easy docking in city centers, and are built to different standards that do not require them to operate in rough seas or challenging open-

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

ocean conditions. River cruises are more port-intensive; they sail through locks and under bridges, with daily stops, and operate in fresh or brackish water. The focus of river cruises is on destination immersion, encouraging guests to disembark and explore cities and villages—often not owned or operated by the cruise line—for cultural experiences.

The Plaintiffs Operate Ocean Cruises

The Plaintiffs were engaged only in the ocean cruise industry during the Defendant's employment. Royal Caribbean Group states on its website that "Royal Caribbean has been delivering innovation at sea since its launch in 1969."

# WHY ROYAL CARIBBEAN

Royal Caribbean has been delivering innovation at sea since its launch in 1969. Each successive class of ships is a record-breaking architectural marvel that revolutionizes vacations. Today, the cruise line continues to dial up the guest experience for adventurous travelers, offering bold onboard thrills, spectacular dining options, breath-taking entertainment and world-class accommodations.

(https://www.royalcaribbean.com/about-us). The Plaintiffs' ocean cruise packages include soft drinks, all onboard dining options, alcoholic beverages, and shore excursions, each of which is available for an additional fee. Plaintiffs did not own or operate, either directly or indirectly, any vessels engaged in river cruising during the Defendant's employment or up to the date specified below. Plaintiffs announced their "entry into the river cruise market" on January 28, 2025, with sailings expected to begin in 2027. (https://www.royalcaribbeangrouppresscenter.com/news/celebrity-cruises-announces-launch-of-river-vacations-2027). They did not mention any operations related to the river cruise industry in the Earnings Report for the First Quarter of 2025, released on April 29, 2025. During the Q2 investor call held on July 29, 2025, Plaintiffs described river cruises as "new experiences" that would begin in 2027, but which were "still a ways away…."

23

<u>Plaintiffs Did Not Expose Defendant To River Cruise Information</u>

Plaintiffs did not provide the Defendant, as part of his work, with confidential, proprietary, or trade secret information related to the construction or operation of river cruise vessels, the river cruise industry, river cruise customers or markets, river cruise destinations, or shoreside experiences. They also did not train him on these topics. Therefore, the Plaintiffs' claims to restrict the Defendant from working for a subsequent employer who is engaged in a different line of business must fail.

<u>Defendant's Employer Operates River Cruises</u>

AmaWaterways is a preeminent river cruise operator that provides premium to luxury river cruise experiences in Europe, Asia, and Africa. (https://www.amawaterways.com/whyamawaterways). AmaWaterways has been an established leader in the river industry for over twenty years. (https://www.amawaterways.com/explore/our-story). Its ships carry an average of 156 guests. Its pricing structure includes all onboard dining offerings, shore excursions, and soft drinks, beer, wine, and some cocktails, with lunch and dinner.

Due to the distinctions between ocean and river cruises and the Plaintiff's business operations while they employed the Defendant as being limited to ocean cruising, Plaintiffs' claims against the Defendant must fail.

### *Sixth Affirmative Defense*

Plaintiffs seek to enforce the restrictive covenants in Exhibits A through K of the Verified Complaint, which are unreasonably over-expansive and not reasonably limited in terms of time, area, and line of business by relying on overly expansive, vague, and ambiguous language, resulting in a lack of mutual assent on all material terms and preventing enforcement. As a result, these

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

restrictions either cannot be enforced or cannot be enforced as written and must be modified and or "blue-penciled" to be narrowly tailored.

### Seventh Affirmative Defense

Plaintiffs are estopped from enforcing the restrictive covenants against Defendant based on their representations that his work for AmaWaterways was not and would not be considered competitive, through their actions and/or inactions. Defendant relied on these representations by or on behalf of one or more of the Plaintiffs, and they cannot now attempt to enforce the restrictive covenants they previously agreed not to pursue.

### Eighth Affirmative Defense

Plaintiffs cannot enforce the restrictive covenants contained in the RSU Agreements appended to the Verified Complaint at Exhibits C through K because Fla. Stat. §542.335(1)(a) imposes as a condition precedent that a restrictive covenant be in writing and signed by the party charged with compliance. Exhibits C through K, which form the basis for Counts II and III, are not signed by the Defendant, requiring the entry of a judgment for the Defendant on Counts II and III.

### Ninth Affirmative Defense

Plaintiffs frustrated the Defendant's ability to continue working for them by discriminating against him and creating a hostile, if not retaliatory, environment in violation of Title VII of the Civil Rights Act of 1964, the Florida Civil Rights Act, and Miami-Dade County Ordinance 11A. While acting through their agents and employees, the Plaintiffs engaged in unlawful discrimination against the Defendant by creating and perpetuating a work environment where he was subjected to derogatory remarks that were so severe and pervasive they altered the terms and conditions of

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

his employment. Plaintiffs' failure or refusal to take proper corrective action in response to the Defendant's repeated complaints and awareness of the discriminatory conduct and involved personnel led precludes Plaintiffs from enforcing any restrictive covenants as a matter equity. Consequently, Plaintiffs are not entitled to any relief based on the agreements attached to the Verified Complaint as Exhibits A through K due to their conduct, actions, and/or inactions.

### Tenth Affirmative Defense

Plaintiffs waived the ability to enforce the restrictive covenants at issue herein against the Defendant by either not enforcing or by agreeing not to enforce the same or similar restrictive covenants to which other former employees agreed after they engaged in work that was or would be violative of those restrictive covenants. Although selective enforcement may not a recognized defense to an otherwise valid restrictive covenant, in and of itself, as a matter of equity, Plaintiffs cannot establish the requisite level of irreparable harm by waiving and/or significantly curtailing the same or similar to restrictive covenants for some employees and not others.

### Eleventh Affirmative Defense

Plaintiffs are unable to enforce the restrictive covenants against the Defendant because they come before the Court with unclean hands. Therefore, Plaintiffs cannot obtain equitable relief as against the Defendant when they (a) retaliated against him for reporting and objecting to being subjected to discriminatory behavior and (b) do not seek to prevent an "unfair advantage" but for the improper purpose of impeding a established river cruise market leader market leader (engaged in lawful competition within the river cruise industry).

### Twelfth Affirmative Defense

Defendant is entitled to a set-off for any damages sought by or awarded to Plaintiffs herein

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

for any settlement with, judgment against, and/or payment from any other party, non-party, or collateral source (insurance policy, tax credit, deductions for losses sustained, etc.).

### *Thirteenth Affirmative Defense*

Plaintiffs are not entitled to injunctive or equitable relief because any injuries they prove to have suffered as a direct and proximate result of any action or inaction by Defendant can be addressed by money damages, only if and to the extent proven.

### *Fourteenth Affirmative Defense*

Plaintiffs' claims fail, in whole or in part, to the extent they failed to mitigate their damages and any damages awarded must be reduced accordingly.

### *Fifteenth Affirmative Defense*

Defendant is entitled to a set-off for any damages sought by or awarded to Plaintiffs herein for all wages (such as accrued but unused paid time off) due to or earned by Defendant but not paid to him.

### *Sixteenth Affirmative Defense*

Plaintiffs waived, are estopped, and/or the doctrine of laches prevents them from enforcing the restrictive covenants against the Defendant because they did not act diligently in seeking to enforce the restrictive covenants against him by delaying any enforcement for nearly three months. Despite attesting that Defendant's current employer publicly announced his hiring as its "SVP Global Sales and Service" on July 31, 2025, Plaintiffs took no action to enforce the agreements appended to the Verified Complaint as Exhibits A through K for nearly three months (which is half of the 6-month restrictive period and one-third of the restrictive period at issue herein). Plaintiffs' delay results in their inability to establish the elements necessary to obtain an injunction

27

and a waiver of their ability to enforce the agreements at issue herein.

### Seventeenth Affirmative Defense

Plaintiffs' damages, if any, are too speculative to support relief as they cannot be established with reasonable certainty.

### Eighteenth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, based upon intervening and superseding actions of Plaintiffs themselves or third parties.

### Reservation of Rights

Defendant reserves the right to assert other viable affirmative defenses as they are revealed through discovery.

WHEREFORE Defendant, Angel Christopher Gomez, having responded to the Complaint, demands the entry of a judgment in his favor and against Plaintiffs, Celebrity Cruises, Inc. and Royal Caribbean Group, Ltd. d/b/a Royal Caribbean Group, entitling him to recover his attorney's fees and costs incurred in defense of Plaintiffs' claims based on the contract between the parties and Fla. Stat. §§57.105(7) and 542.335, and to award him such other and further relief as the Court deems just and proper.

Respectfully submitted this 10th day of December 2025,

s/Brian H. Pollock, Esq.
Brian H. Pollock, Esq.
Fla. Bar No. 174742
brian@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, FL 33146
Tel:    305.230.4884
*Counsel for Defendant*

28