# IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
## IN AND FOR MIAMI-DADE COUNTY, FLORIDA
### COMPLEX BUSINESS DIVISION

CELEBRITY CRUISES, INC. and ROYAL
CARIBBEAN CRUISES LTD., d/b/a
ROYAL CARRIBEAN GROUP,

   Plaintiffs,

    CASE NO.: 2025-020399-CA-01

  v.

ANGEL CHRISTOPHER GOMEZ,

   Defendant.

_____

## PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY INJUNCTION

  Plaintiffs Celebrity Cruises Inc., ("Celebrity") and Royal Caribbean Cruises Ltd. d/b/a
Royal Caribbean Group ("Royal Caribbean") (collectively, "Plaintiffs"), pursuant to Florida
Statutes § 542.335(1)(j), and Florida Rule of Civil Procedure 1.610(a)(2), move on an emergency
basis for the entry of a Temporary Injunction prohibiting Defendant Angel Christopher Gomez
("Defendant") from any further actual or threatened breach of Defendant's agreements not to
compete with Plaintiffs, disclose Plaintiffs' confidential information, or solicit Plaintiffs'
employees and any further actual or threatened use or disclosure of Plaintiffs' trade secrets in
violation of Florida law.

## CERTIFICATE REGARDING NOTICE

  Plaintiffs are seeking an evidentiary hearing regarding this emergency motion and are
providing Defendant with notice of the instant Motion and Plaintiffs' request for an evidentiary
hearing.

## I.  <u>INTRODUCTION</u>

Restrictive covenant agreements exist because of cases like this one. Defendant, former Celebrity Associate Vice President, Consumer Outreach, was privy to highly confidential and proprietary business information, including trade secrets, and was responsible for over 400 employees. He resigned in May 2025 and went to work for another cruise company as a Senior Vice President of Global Consumer Sales and Service in breach of his restrictive covenant agreements that he agreed to as an executive and as a recipient of stock grants from Celebrity's ultimate parent company, Royal Caribbean.

Not only has Defendant breached his contractual non-compete obligations to Plaintiffs, but hehas also breached his contractual non-solicitation obligations to Plaintiffs by soliciting Plaintiffs' employees. Further, a forensic examination of Defendant's company-issued laptop revealed suspicious activity consistent with misappropriating Plaintiffs' confidential and trade secret information in further breach of his contractual obligations to Plaintiffs and in violation of the Florida Uniform Trade Secrets Act ("FUTSA").

Unless the Court immediately enforces the terms of Defendant's restrictive covenant agreements with Plaintiffs and the obligations therein, Plaintiffs will suffer irreparable and actual injury to their legitimate business interests, including losing their: (1) non-public customer information, business development information, marketing strategies, compensation information, and other confidential, proprietary, and trade secret information; (2) goodwill and valuable business relationships with existing employees that Defendant supervised, trained, and about which he received substantial confidential information during his employment with Plaintiffs; and (3) goodwill and valuable business relationships with partners, including travel agencies and travel industry trade groups.

It is well-established that restrictive covenants designed to protect these recognized legitimate business interests are both valid and enforceable. Moreover, Florida courts and the Florida legislature have consistently recognized a temporary injunction is the presumptive, and often only, remedy adequate to prevent the irreparable harm that will inevitably follow if Defendant is allowed to continue breaching his post-employment obligations to Plaintiffs and his continued possession and use of Plaintiffs' trade secrets.

## II.  STATEMENT OF FACTS

Plaintiffs incorporate by reference the verified factual allegations contained in Paragraphs 16-98 of the Verified Complaint [D.E. 1] ("Compl.").

## III.  ARGUMENT

The evidence in this case, including the overwhelming evidence presented in the Verified Complaint and declaration by the computer forensics company, FTI Consulting ("FTI"), illustrate how Defendant fully accepted the benefits of his employment with Celebrity (e.g., substantial salary and units of restricted stock, training and development, and opportunities to develop relationships with employees and third-party business partners) and then deliberately breached his valid and enforceable non-competition, non-solicitation, and confidentiality obligations to Plaintiffs. FTI's forensic review of Defendant's company-issued laptop also revealed highly suspicious computer activity consistent with the misappropriation of Plaintiffs' confidential and trade secret information. By virtue of Defendant's intentional breaches of his restrictive covenants, Plaintiffs have suffered irreparable harm. A future monetary damage award is an inadequate remedy to preserve and protect Plaintiffs from the imminent, if not already ongoing, disclosure and use of their confidential information for the benefit of a competitor and the damage to their valuable relationships with their employees and business partners. Accordingly, and as further set

forth below, Plaintiffs respectfully request that the Court issue an immediate temporary injunction against Defendant.

A.    <u>**Standard for Temporary Injunctive Relief**</u>

Temporary injunctions are available when a party might suffer irreparable harm before a dispute can be determined.  *See, e.g.*, *Hotelerama Assocs. v. Bystrom*, 449 So. 2d 836, 838 (Fla. 3d DCA 1984).  A temporary injunction is designed to preserve the *status quo* until the Court can fully resolve a dispute on the merits at trial. *Id.* To establish entitlement to a temporary injunction in a restrictive covenant case, a movant must demonstrate:

(1)    irreparable harm if the status quo is not maintained;

(2)    no adequate remedy at law;

(3)    that any public interest will not be disserved; and

(4)    a substantial likelihood of success on the merits.

*Medco Data, LLC v. Bailey*, 152 So. 3d 105, 106 (Fla. 2d DCA 2014); *Atomic Tattoos, LLC v. Morgan*, 45 So. 3d 63, 64 (Fla. 2d DCA 2010); *Zupnik v. All Florida Paper, Inc.*, 997 So. 2d 1234, 1238 (Fla. 3d DCA 2008).

In the context of actions to enforce restrictive covenants under Florida Statutes § 542.335, these requirements are *prima facie* satisfied upon a showing of:

(1)    the existence of an enforceable restrictive covenant;

(2)    the former employees' intentional breach of the restrictive covenant; and

(3)    the existence of no adequate remedy except injunctive relief.

*Atomic Tattoos*, 45 So. 3d at 66 (quoting *Walsh v. Paw Trucking,* 942 So. 2d 446, 448 (Fla. 2d DCA 2006) ("Evidence that an enforceable covenant not to compete was breached will support a trial court's finding of the likelihood of success on the merits.")); *see also Milner Voice & Data,*

*Inc. v. Tassy*, 377 F. Supp. 2d 1209, 1214 (S.D. Fla. 2005). Here, Defendant cannot seriously contest the existence of valid restrictive covenants (non-competition, non-solicitation, and non-disclosure), their enforceability under Florida Statutes § 542.335, Defendant's intentional breaches and threatened breaches of these covenants, and the presumptive availability of injunctive relief to prevent further breaches and restore the status quo.

**B.**   **Plaintiffs Have a Substantial Likelihood of Success on the Merits and a Clear Legal Right to the Relief Requested.**

Section 542.335 of the Florida Statutes governs the enforcement of restrictive covenants. *GFA Int'l v. Trillas*, 327 So. 3d 872, 875 (Fla. 3d DCA 2021). Section 542.335(1)(j) provides that "a court shall enforce a restrictive covenant by any appropriate and effective remedy, including, but not limited to, temporary and permanent injunctions." *See also Family Heritage Life Ins. Co. of Am. v. Combined Ins. Co. of Am.*, 319 So. 3d 680 (Fla. 3d DCA 2021) (noting that Fla. Stat. § 542.335 expressly permits restrictive covenants and permits enforcement by injunction).

Under the statute, courts must enforce restrictive covenant agreements when they are (a) reasonably related to the protection of "legitimate business interests" and (b) not unreasonable in terms of temporal or geographic scope. Fla. Stat. § 542.335(1); *see also Allied Universal Corp. v. Given*, 223 So. 3d 1040, 1043 (Fla. 3d DCA 2017) (holding it was error for court to deny temporary injunction when agreement was supported by statutorily legitimate business interests); *Leighton v. First Universal Lending, LLC*, 925 So. 2d 462, 464 (4th DCA 2006) ("Non-compete clauses are valid so long as the contracts are reasonable in time, area, and line of business.") (citing Fla. Stat. § 542.335(1)).

Fla Stat. §542.335(1)(b) provides a non-exhaustive list of "legitimate business interests," which include, without limitation, trade secrets, valuable confidential business or professional

information that otherwise does not qualify as trade secrets, substantial relationships with specific prospective or existing customers or clients, goodwill, and specialized training. *See, e.g.*, *Allied Universal Corp. v. Given*, 223 So. 3d 1040, 1043 (Fla. 3d DCA 2017); *see also AutoNation, Inc. v. O'Brien*, 347 F. Supp. 2d 1299, 1304 (S.D. Fla. 2004) (citing Fla. Stat. § 542.335(1)(b)); *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1234 (11th Cir. 2009) ("when an employee has access to confidential business information crucial to the success of an employer's business, that employer has a strong interest in enforcing a covenant not to compete"); *Mktg. Partner Servs. LLC v. Sciortino*, No. 24-61567-CIV, 2025 U.S. Dist. LEXIS 13883, at *19 (S.D. Fla. Jan. 27, 2025) (trade secrets and business relationships were legitimate business interests supporting restrictive covenants); *White Cap., L.P. v. Heyden Enters., LLC*, No. 23-14248-CIV, 2023 U.S. Dist. LEXIS 243088, at *19 (S.D. Fla. Nov. 9, 2023) (non-compete provision supported by "confidential information and trade secrets … which impact … relationships with existing customers and customer goodwill"); *Freedom Med., Inc. v. Sewpersaud*, 469 F. Supp. 3d 1269, 1277 (M.D. Fla. 2020) (finding protection of confidential information was a legitimate business interest justifying non-compete and 12 months was reasonable duration). While the statute enumerates multiple legitimate business interests that may support restrictive covenants, a plaintiff need only establish <u>one</u> legitimate business interest to justify the restrictive covenant. *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1233 (11th Cir. 2009); *AutoNation v. O'Brien*, 347 F. Supp. 2d 1299, 1304 (S.D. Fla. 2004) (citing Fla. Stat. § 542.335(1)(b)).

### 1.   Plaintiffs' Confidential Information, Employee Relationships, and Trade Relationships Constitute Legitimate Business Interests.

Here, there are eleven separate agreements, each of which evidence restrictive covenants reasonably necessary to protect a legitimate business interest. These eleven agreements are the 2018 Non-Compete Agreement, the 2022 Non-Compete Agreement, and the nine separate Royal

Caribbean Restricted Stock Unit Agreements (the "RSU Agreements," and collectively with the 2018 Non-Compete Agreement and 2022 Non-Compete Agreement, the "Agreements"). The non-competition, non-solicitation, and non-disclosure provisions in the Agreements protect Plaintiffs' considerable investment in their confidential and proprietary information. Compl. ¶¶ 29-76, 96, 97. Defendant, by virtue of his leadership role with Celebrity and because he was bound by the restrictive covenants in the Agreements, become inexorably and intimately knowledgeable regarding Plaintiffs' confidential information concerning their strategies, customers, employees, and business partners during his tenure. Compl. ¶¶ 26-33. 37-41. As set forth in the Verified Complaint, Defendant had access to confidential and proprietary business information relating to Plaintiffs' business models. *Id.* Defendant had intimate knowledge regarding direct sales programs, including talent strategies, compensation, and sales/incentive programs for sales employees; detailed information regarding sales strategies and sourcing; information about Celebrity's sales training programs; and strategies for improving such programs. *Id.* Pursuant to Florida Statutes § 542.335(b), such confidential information alone is a legitimate business interest sufficient to support non-competition and non-solicitation covenants independent of relationships with customers and business partners and goodwill in the industry. *See Tristate Courier & Carriage, Inc.*, No. C.A. 20574-NC, 2004 WL 835886, at *10 (finding confidential information protected by noncompete); *Silversea Cruises Ltd. et al. v. Matias Lira et al.*, Case No. 2022-016210-CA-01 (Fla. 11th Cir. Ct. Feb. 15, 2023) (finding Royal Caribbean RSU Agreements, like those at issue here, were supported by legitimate business interests).

In *AutoNation*, 347 F. Supp. 2d at 1305, the court enforced a noncompetition agreement involving a former employee with access to confidential and proprietary business information during his employment. The defendant, who left his employment with plaintiff to work for a

competitor, had access during his employment to compilations of business strategies and techniques, as well as confidential business sales and market analysis information. *Id*. at 1305-06. The court held such information constituted a legitimate business interest justifying the enforcement of the noncompetition agreement, and it held a competitor who gained access to such information would have an unfair competitive advantage. *Id*.

Here, as in the cases cited above, it is undisputed that in addition to relationships with employees and vendors/partners, Plaintiffs maintain valuable, confidential, and proprietary information concerning their business and employees and other confidential information that gives them a competitive advantage in the marketplace. Defendant had access to this information because of his position with Celebrity. Florida recognizes these are legitimate business interests warranting enforcement of the non-competition and non-solicitation obligations in the Agreements.

### 2.    The Restrictive Covenants Are Reasonable in Scope.

Florida Statutes § 542.335 merely requires Plaintiffs to make a *prima facie* showing that the restrictions on competition are reasonably necessary to protect their legitimate business interests; then, it becomes Defendant's burden to prove their contractual restraints are overbroad, overlong, or otherwise not reasonably necessary to support the restrictions. *See Hilb Rogal & Hobbs of Florida, Inc. v. Grimmel*, 48 So. 3d 957, 959-60 (Fla. 4th DCA 2010) (citing Fla. Stat. § 542.335(1)(c)). Further, the statute expressly proscribes that courts should "construe a restrictive covenant in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement." Fla. Stat. § 542.335(1)(h). Additionally, here, Defendant expressly acknowledged and agreed that the restrictive covenants and other terms and conditions of the 2022 Non-Compete Agreement and the RSU Agreements are reasonable and reasonably

necessary to protect the legitimate business interests of the Company. 2022 Non-Compete Agreement at ¶ 4; RSU Agreements at 3 (Employee "agrees that the restrictions set forth are fair and reasonable and are reasonably required for the protection of the interests of the Company… and for the protection of the business of Company"). In determining the reasonableness of a restrictive covenant, Florida courts also examine its geographic and temporal scope. *See Auto Club Affiliates, Inc. v. Donahey*, 281 So. 2d 239 (Fla. 2d DCA 1973) (*cert. denied*, 285 So. 2d 28 (Fla. 1973)); *Tassy*, 377 F. Supp. 2d at 1217 (upholding one-year non-competition covenant and two-year non-solicitation covenant as reasonable).

The Restricted Period of the restrictive covenants in the Agreements is nine (9) months post-employment with Plaintiffs,[1] and the noncompetition provisions apply ***only*** to companies engaged or preparing to engage in cruising,[2] with a minimum fleet size of 500 berths, or cruise-related business of any such entities.[3] The restriction is reasonably narrow in scope/line of business since it is limited solely to the companies that fall within these parameters.

The restriction is also reasonable with respect to its nine-month temporal scope. FLA. STAT. § 542.335(1)(d)(1) (for a restrictive covenant not predicated on the protection of trade secrets "a court shall presume reasonable in time any restraint of 6 months or less in duration and shall presume unreasonable in time any restraint more than 2 years in duration."); see also FLA. STAT. § 542.335(1)(e) (for a restrictive covenant predicated on the protection of trade secrets "a

---

[1] While the 2016 and 2017 RSU Agreements contain restrictive covenants lasting six months post-employment, the other Agreements have restrictive covenants with a nine-month duration. *See* Compl., Exs. C-D (2016 RSU Agreement and 2017 RSU Agreement) at Schedule A.

[2] Only the 2024 RSU Agreement and 2025 RSU Agreement non-competition provisions contain the "preparing to engage in" language. *See* Compl., Exs. J-K (2024 RSU Agreement and 2025 RSU Agreement) at Schedule A.

[3] While the 2018 Non-Compete Agreement has a 1,000 berth limitation, the other Agreements contain a 500-berth limitation. A "berth" on a ship is a sleeping space or space to sleep. For example, a room that sleeps four people is equivalent to four berths.  In the cruise industry, the number of passengers accommodated on a ship is equivalent to the number of berths. Compl. fn. 1.

court shall presume reasonable in time any restraint of 5 years or less and shall presume unreasonable in time any restraint of more than 10 years."); *see Alonso-Llamazares v. Int'l Dermatology Rsch., Inc.*, 339 So. 3d 385, 390 (Fla. 3d DCA 2022) (two-year non-compete reasonable); *Spine v. Moulton*, 346 So. 3d 154, 159 n.3 (Fla. 2nd DCA 2022) ("two-year time period, geographic area, and line of business restricted appear to be reasonable based upon Florida caselaw").

Given the global nature of the cruise industry and the limited temporal scope and fleet size limitation, the restrictions are enforceable even without reference to geography. *Envtl. Servs., Inc. v. Carter*, 9 So. 3d 1258, 1264 (Fla. 5th DCA 2009) (enforcing non-solicitation agreement despite lack of *any* geographic limitation because it did not prohibit all competition); *see also AutoNation*, 347 F. Supp. 2d at 1307 (finding geographic scope reasonable where former employee was "prohibited from working in any geographic space in which AutoNation operates"); *Head Kandy, LLC v. McNeill*, No. 23-CV-60345, 2023 U.S. Dist. LEXIS 162474, at *25 (S.D. Fla. Sep. 12, 2023) (holding that worldwide non-compete was reasonable under Florida law based on need to protect customer relationships and goodwill).

In *Lira*, this Court enforced restrictive covenants functionally indistinguishable from the restrictive covenants in the Agreements here, but with longer restricted periods (two years), because they were "reasonable in time, area, and line of business and are reasonably necessary to protect Plaintiffs' legitimate business interests . . . . Plaintiffs' legitimate business interests justifying the restrictions include, without limitation, [defendant's] access to valuable confidential business information, such as Plaintiffs' consumer sales strategies, goals, budgets, plans, revenue and employee compensation structures; substantial relationships with employees, customers, vendors, and travel partners; and specialized training provided to defendant." *Silversea Cruises*

*Ltd. et al. v. Matias Lira et al.*, Case No. 2022-016210-CA-01, at *13 (Fla. 11th Cir. Ct. Feb. 15, 2023). The Court found that these factors warranted enforcement of the non-compete agreement.

For the same reasons that the non-competition restriction is reasonable and enforceable, the employee non-solicitation provision is also reasonable and enforceable. *See Rauch v. AJP Pine Island Warehouses, Inc.*, 313 So. 3d 625, 630 (Fla. 4th DCA 2021) (non-competition and non-solicitation agreements are subject to same requirements under Section 542.335). The non-solicitation provision here is limited in time (nine months) and scope (current employees and anyone employed within the last six months of Defendant's employment) to protect Plaintiffs' legitimate business interests. *See Lincare, Inc. v. Markovic*, No. 8:22-cv-918-MSS-TGW, 2022 U.S. Dist. LEXIS 209763, at *19 (M.D. Fla. Nov. 17, 2022) (holding that one-year employee non-solicit agreement was reasonable when employee had access to confidential information). The brief nine-month term and limited scope of Defendant's non-competition and non-solicitation obligations are reasonable and enforceable under the standards articulated in Florida Statutes § 542.335(1)(d)(1) and should be enforced here.

### 3.  Defendant Has Clearly Breached the Agreements.

Here, there can be no factual dispute regarding whether Defendant has breached the Agreements. Defendant is working for AmaWaterways (the "New Employer"), which is a cruise company with a fleet size of more than 500 berths. Compl. ¶ 82. And while not required to show a breach of the RSU Agreements and the 2018 Non-Compete Agreement,[4] in his role with the New Employer, Defendant is providing services of the very same kind he provided to the Company during his employment. Compl. ¶ 85. Defendant began working for the New Employer within approximately two months of his resignation from the Company – well within the nine-month

---

[4] While the 2022 Non-Compete Agreement restricts Defendant from providing services "of the kind he provided during his employment," the other Agreements do not contain similar language. *See* Compl., Exs. A-K.

Restricted Period. Compl. ¶ 80-83. This is a breach of his non-competition obligations. Defendant

has also breached his non-solicitation obligations by seeking to employ individuals employed by

either of Plaintiffs. Compl. ¶ 89. Defendant has done so during the nine-month Restricted Period.

*Id*. Defendant's actions have damaged Plaintiffs.

### 4. Defendant Misappropriated Plaintiffs' Trade Secrets in Violation of the FUTSA.

In addition to Plaintiffs having a substantial likelihood of success on their breach of

contract claims, which alone would be a sufficient basis to grant injunctive relief, Plaintiffs have

a substantial likelihood of success on their claim for the misappropriation of trade secrets under

the FUTSA. The FUTSA creates a private right of action for the misappropriation of trade secrets.

Fla. Stat. § 688.001, *et seq*. Under the FUTSA, a trade secret is:

> information, including a formula, pattern, compilation, program,
> device, method, technique, or process that:
> (a)   Derives independent economic value, actual or potential, from
> not being generally known to, and not being readily ascertainable by
> proper means by, other persons who can obtain economic value
> from its disclosure or use; and
> (b)   Is the subject of efforts that are reasonable under the
> circumstances to maintain its secrecy.

Fla. Stat. § 688.002(4). Under the FUTSA, to misappropriate a trade secret means to:

> disclos[e] or use . . . a trade secret of another without express or
> implied consent by a person who . . . [a]t the time of disclosure or
> use, knew or had reason to know that her or his knowledge of the
> trade secret was . . . [a]cquired under circumstances giving rise to a
> duty to maintain its secrecy or limit its use.

Fla. Stat 688.002(2).

Here, Plaintiffs have established that they possessed trade secrets that they took reasonable

steps to protect. Compl. ¶¶ 29, 92-94, 96-97. Over the course of Defendant's employment, he had

access to a variety of trade secrets commensurate with his senior role. Compl. ¶¶ 28-33. Defendant

is believed to have misappropriated Plaintiffs' trade secrets during and after his employment with Celebrity. For example, on April 11, 2025, over 150 company files were accessed on his company-issued laptop within an hour while an external drive was plugged into the laptop. Compl. ¶¶ 91-95. The files interacted with during that one hour include a list of internal contact center agents Plaintiffs specifically selected to train on river cruises and other confidential internal materials containing proprietary strategic, financial, and operating plan information. *Id.* And on May 15, 2025, only eleven days before his last day of employment, a personal Google Drive account was accessed on Defendant's company-issued laptop, and more confidential files were accessed, including without limitation files containing information on Plaintiffs' trading performance and revenue pricing and distribution, and a strategic document relating to the transfer of a direct booking to a travel agent. Compl. ¶¶ 91, 96-98. These actions evidence misappropriation of Plaintiff's trade secrets in violation of the FUTSA. Therefore, Plaintiffs have established that they are likely to prevail on their claims under the FUTSA.

C.      **Plaintiffs Do Not Have an Adequate Remedy at Law and Will Be Irreparably Harmed Absent Injunctive Relief.**

"The violation of an enforceable restrictive covenant ***creates a presumption of irreparable injury*** to the person seeking enforcement of a restrictive covenant."[5] Fla. Stat. § 542.335(1)(j); *see Fam. Heritage Life Ins. Co. of Am.*, 319 So. 3d 680, 684 (Fla. 3d DCA 2021) ("It is well-established that where a party demonstrates that a violation of an enforceable restrictive covenant in an employment agreement has occurred, an injunction is proper and there is no adequate remedy

---

[5] Moreover, in the RSU Agreements, Defendant agreed that breach of the restrictive covenants would result in "substantial harm," and that the restrictions would therefore be "enforced to the maximum extent permitted by law." *See* Compl. Exs. C-K. Similarly, in the 2022 Non-Compete Agreement, Defendant agreed, among other things, that any "breach or threatened breach by [Defendant] of any restrictive covenant set forth in [the 2022 Non-Compete Agreement] . . . would cause irreparable injury to the Company, and that . . . the Company will be entitled to seek all available civil remedies, at law or in equity, including, without limitation, an injunction without posting a bond, damages, attorneys' fees, and costs." *See* Compl. Ex. B.

at law."); *Allied Universal Corp. v. Given*, 223 So. 3d 1040, 1043 (Fla. 3d DCA 2017) (proof of legitimate business interests supporting restrictive covenants created presumption of irreparable harm); *Data Payment Sys. v. Caso*, 253 So. 3d 53, 58 (Fla. 3d DCA 2018) (trial court erred in not applying statutory presumption of harm). Furthermore, there is a presumption that the use of specific trade secrets constitutes an irreparable injury. Fla. Stat. § 542.33(2)(a). Accordingly, once a plaintiff demonstrates that a defendant breached a restrictive covenant or misappropriated the plaintiff's trade secrets, a court *must order* injunctive relief unless the defendant can establish the absence of irreparable harm.

Further, it is well-settled that direct interference with identifiable existing relationships, and the resulting loss of goodwill, causes irreparable harm and cannot be adequately remedied by an award of monetary damages. Thus, irreparable harm is present where, as here, a defendant interferes with the former employer's (*i.e.*, Plaintiffs') legitimate business interests, such as by soliciting the former employer's employees.  *See Quirch Foods LLC v. Broce*, 314 So. 3d 327, 342 (Fla. 3d DCA 2020) (former employees could not rebut statutory presumption when they were in direct competition and had solicited employees); *Infinity Home Care, LLC v. Amedisys Holding, LLC*, 180 So. 3d 1060, 1066 (Fla. 4th DCA 2015) (former employee did not rebut statutory presumption and injunction was proper).

In addition, the FUTSA specifically authorizes injunctive relief for actual or threatened misappropriation. Fla. Stat.§ 688.003. The misappropriation of trade secrets constitutes irreparable injury. *Hatfield v. AutoNation, Inc.*, 939 So. 2d 155, 157 (Fla. 4th DCA 2006) (when former employee misappropriated trade secrets, the fact that employer "could only speculate on the magnitude of the ramifications of disclosure of its secrets lends support to the irreparable nature of harm."); *Mapei Corp. v. J.M. Field Mktg.*, 295 So. 3d 1193, 1200 (Fla. 4th DCA 2020)

("irreparable harm was properly presumed on the evidence of trade secrets and misappropriation").

D.     **The Public Interest Favors Enforcement.**

The "public policy in Florida favors *enforcement* of reasonable covenants not to compete." *See AutoNation*, 347 F. Supp. 2d at 1308. That public policy is clearly expressed in Florida Statutes § 542.335(1)(h): "A court shall construe a restrictive covenant in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement." Accordingly, the public interest factor inherently favors temporary injunctive relief.

Further, in a situation such as this, where an employer has provided its employee with significant confidential and proprietary information in connection with the employee's job, it is in the public's interest for the employer to be able to protect this information through contracts with its employees. *See Quirch Foods LLC v. Broce*, 314 So. 3d 327, 343 (Fla. 3d DCA 2020) ("[E]nforcing these restrictive covenants serves the public interest because it demonstrates that courts will uphold agreements, and employers can rely on non-compete agreements to protect their legitimate business interests. Companies who provide confidential information to [their] employees need to know that [they] will be protected if an employee resigns or is terminated because the non-compete agreement will be enforced."); *AmeriGas Propane, Inc. v. Sanchez*, 335 So. 3d 1253, 1258 (Fla. 3d DCA 2021) (the "public has a cognizable interest in the protection and enforcement of contractual rights") (quoting *Telemundo Media, LLC v. Mintz*, 194 So. 3d 434, 436 (Fla. 3d DCA 2016)).

Only with this protection do employers have an incentive to invest time, manpower, and resources in developing and growing their business. Accordingly, the public interest favors the issuance of injunctive relief in Plaintiffs' favor. *See AutoNation*, 347 F. Supp. 2d at 1308 (public interest is served by enforcing valid contractual provisions, especially those that the Florida

Legislature has deemed important enough to protect by statute); *Office Depot, Inc. v. Babb*, 2020 U.S. Dist. LEXIS 48012, at *13-14 (S.D. Fla. Mar. 19, 2020) (finding injunctive relief to be in the public interest because "[w]hen freely bargained for, agreed to, and executed, covenants not to compete are in the public interest and necessary to encourage business expansion and growth."); *Mainsail Parent, LLC v. Jewell*, No. 24-22875-CIV, 2024 U.S. Dist. LEXIS 152480, at *13 (S.D. Fla. Aug. 26, 2024) (citing *XN Fin. Servs., Inc.*, No. 12-80143-CIV, 2012 U.S. Dist. LEXIS 207445, at *10 (S.D. Fla. Mar. 5, 2012)) ("The undersigned agrees with other courts concluding that '[t]he public [] has an interest in enforcing contracts and preventing unfair, tortious competition.'"). Courts repeatedly find that "the public interest is served by protecting trade secrets" *Id.* at *12 (quoting *Freedom Med.*, 469 F.Supp.3d at 1279).

### III.    BOND

In accordance with Florida Statutes 542.335(1)(j) and Florida Rule of Civil Procedure 1.610, Plaintiffs will post a proper bond in the amount set by this Court. Plaintiffs submit that bond in the amount of $10,000.00 is sufficient given the clear evidence of Defendant's misconduct set forth herein. *See Avalon Legal Info. Servs. v. Keating*, 110 So. 3d 75, 84 (Fla. 5th DCA 2013) (considering chances of overturning temporary injunction, and affirming trial court order setting bond at $10,000.00 for temporary injunction enforcing restrictive covenant); *Montville v. Mobile Med. Indus.*, 855 So. 2d 212, 216 (Fla. 4th DCA 2003) (trial court properly considered adverse party's chances of overturning the temporary injunction in setting bond at a fraction of potential damages and attorneys' fees); *Barbara v. V.*, 2016-026543-CA-01, 2017 Fla. Cir. LEXIS 17767 (11th Cir. Oct. 24, 2017) (finding $10,000.00 reasonable bond for injunction enforcing non-compete covenant). This bond is further warranted because Royal Caribbean is a publicly traded entity with sufficient assets to satisfy any award of damages, attorneys' fees, and costs to which

Defendant could reasonably be entitled in the unlikely event the Court ever determined this temporary injunction was improperly granted.

## IV.    SECRECY OF PROCEEDINGS

Plaintiffs note that Section 688.006, Florida Statutes, provides for the preservation of secrecy of any alleged trade secrets at issue in this case. Specifically, it provides:

> In an action under ss. 688.001-688.009, a court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include granting protective orders in connection with discovery proceedings, holding in camera hearings, sealing the records of the action, and ordering any person involved in the litigation not to disclose an alleged trade secret without prior court approval.

Accordingly, Plaintiffs respectfully request that the secrecy of all of Plaintiffs' trade secrets be maintained as afforded by Florida statute.

## V.    CONCLUSION

Plaintiffs respectfully request that the Court grant their Motion and enter a temporary injunction, including but not limited to the following relief:

A.    Prohibiting Defendant, and anyone acting in concert with him, from violating any restrictive covenants, including the non-competition, non-solicitation, and confidentiality provisions, contained in the Agreements.

B.    Prohibiting Defendant, and anyone acting in concert with him, for nine months from the date of the last breach, from directly or indirectly breaching Defendant's non-competition obligations to Plaintiffs;

C.    Prohibiting Defendant, and anyone acting in concert with him, for nine months from the date of the last breach, from directly or indirectly breaching Defendant's non-solicitation obligations;

D.    Prohibiting Defendant, and anyone acting in concert with him, from directly or

indirectly using, disclosing, or otherwise misappropriating any confidential, proprietary, and/or trade secret information of Plaintiffs;

E.  Compelling the immediate return of all of Plaintiffs' confidential, proprietary, and/or trade secret information;

F.  Compelling Defendant to submit his personal devices and accounts for a forensic examination at Defendant's expense; and

G.  Granting Plaintiffs such other and further relief as the Court may deem just and proper.[6]

Dated:  November 11, 2025

Respectfully submitted,

LITTLER MENDELSON P.C.

/s/ Tyler A. Sims
Tyler A. Sims
Florida Bar No. 1048908
tsims@littler.com
West A. Holden
Florida Bar No. 0113569
wholden@littler.com
111 North Orange Avenue, Suite 1750
Orlando, FL 32801.2366
Tel:    407.393.2900
Fax:    407.393.2929

Paul J. Kennedy (*pro hac vice* to be filed)
Virginia Bar No. 29802
pkennedy@littler.com
815 Connecticut Avenue, N.W.
Suite 400
Washington, DC 20006
Tel:    202.414.6855

*Attorneys for Plaintiffs*

---

[6] Pursuant to the Court's Additional Instructions on Emergency Motions, a proposed order is attached hereto as Exhibit 1.

## **CBL RULE 4.3 CERTIFICATION**

I certify that Plaintiffs' counsel has conferred with Defendant's counsel as set forth below:

- **Date of Conference(s):** November 5, 2025, at 3pm via video call.

- **Number of good faith efforts initiated (via fax, email or voicemail):** One video call and a follow up email.

- **Dates of such efforts:** November 5, 2025

- **Names of Participating Attorneys:** Tyler A. Sims and West Holden on behalf of Plaintiffs.  Brian H. Pollock on behalf of Defendant.

- **Results Achieved:** The parties did not agree on any of the relief Plaintiffs seek in the proposed order filed herewith.

*/s/ Tyler A. Sims*
Tyler A. Sims

## **CERTIFICATE OF SERVICE**

I HEREBY certify that on the 11th day of November 2025, I electronically served the foregoing via email on Defendant's counsel, Brian H. Pollock at brian@fairlawattorney.com

# EXHIBIT 1

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
COMPLEX BUSINESS DIVISION**

CELEBRITY CRUISES, INC., and ROYAL
CARIBBEAN CRUISES LTD., d/b/a ROYAL
CARRIBEAN GROUP,

        Plaintiff,

    v.

ANGEL CHRISTOPHER GOMEZ,
        Defendant.

CASE NO.: 2025-020399-CA-01

**[PROPOSED] ORDER GRANTING PLAINTIFFS' EMERGENCY MOTION FOR
TEMPORARY INJUNCTION**

THIS CAUSE comes before the Court upon the Plaintiffs' Emergency Motion for Temporary Injunction (the "Motion") and the Court having reviewed and weighed the evidence, the Motion and related filings, including the Verified Complaint (D.E. 1), and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED as follows:

1.     The Motion is **GRANTED**.

2.     Plaintiffs Celebrity Cruises Inc. ("Celebrity"), and Royal Caribbean Cruises Ltd. d/b/a Royal Caribbean Group ("Royal Caribbean") (collectively, "Plaintiffs") have satisfied the requirements for temporary injunctive relief, as they have demonstrated irreparable harm, the lack of an adequate remedy at law, the lack of disservice of the public interest, and a substantial likelihood of success on the merits.

3.     Defendant's Agreements with Plaintiffs are governed by Florida law and are enforceable contracts under Fla. Stat. § 542.335, supported by legitimate business interests, including Defendant's access to Plaintiffs' confidential information and trade secrets.

1

4.      Defendant is breaching or threatening to breach his non-competition, non-solicitation, and non-disclosure obligations to Plaintiffs.

5.      Defendant is also misappropriating and/or threatening to misappropriate Plaintiffs' trade secrets.

6.      Defendant's breaches of his contractual obligations and actual or threatened misappropriation of trade secrets give rise to a presumption of irreparable harm, which Defendant cannot rebut.

IT IS HEREBY ORDERED as follows:

A.      For a period of nine (9) months from the date of this Order, Defendant and anyone acting in concert with him shall not, directly or indirectly, be employed by or provide services, in any capacity, to any other entity engaged in cruises with a minimum fleet size of 500 berths, including, without limitation, AmaWaterways.

B.      For a period of nine (9) months from the date of this Order, Defendant and anyone acting in concert with him shall not (i) employ or seek to employ anyone employed by either of Plaintiffs or who was employed within the last six (6) months of Defendant's employment, or (ii) solicit, induce, or influence anyone employed by Plaintiffs to discontinue, reduce, or modify their relationship with Royal Caribbean or its subsidiaries, including Celebrity.

C.      For a period of nine (9) months from the date of this Order, Defendant and anyone acting in concert with him shall not directly or indirectly solicit, induce, or influence any proprietor, partner, stockholder, lender, director, officer, employee, joint venturer, investor, consultant, agent, lessor, supplier, customer or any other person or entity that has a business relationship with Plaintiffs or their affiliates to discontinue or reduce or modify the extent of such relationship with Royal Caribbean or any of its subsidiaries, including Celebrity.

D.      Defendant and anyone acting in concert with him shall not directly or indirectly

use, disclose, or otherwise misappropriate any of Plaintiffs' Confidential Information or trade secrets. For purposes of this Order, "Confidential Information" is defined as set forth in Section 1(A) of the parties' Employee Nondisclosure and Noncompetition Agreement, dated December 15, 2022, and includes, but is not limited to, information, observations, procedures, practices, and data, whether written or oral, regarding any of the business, operations or affairs of the Company, its subsidiaries and its affiliates, including, by way of example, strategies, planning, research, developments, product designs or specifications, manufacturing processes, "know-how," prices, suppliers, customers, costs, workflows, software, developments, inventions, formulas, technology, designs, drawings, engineering plans, hardware configuration information, and any knowledge or information with respect to confidential or trade secrets of Royal Caribbean, its subsidiaries and affiliates, including Celebrity, or any information that a reasonable person would conclude is intended to remain confidential due to its nature or the circumstances under which it was learned.

E.      Defendant shall preserve all documents, electronically stored information, and other information potentially relevant to the factual allegations and claims contained within the Verified Complaint, including, without limitation, any documents (hard copy or electronic) containing Plaintiffs' information; any files that were transferred from or originated from any of Plaintiffs' devices or systems; and any communications (including, without limitation, text messages, WhatsApp messages, and emails) with any of Plaintiffs' current or former employees, current or former customers, potential customers, vendors, or partners, whether stored on personal electronic devices (such as cellular phones, tablets, or laptops) or in email or other cloud storage accounts.

F.      Defendant shall return all copies of all of Plaintiffs' documents in his possession, custody, or control, and submit to a forensic examination of Defendant's devices (including personal laptops, cell phones, USB devices, and tablets) and accounts (including email and cloud

storage accounts, such as Google Drive). Defendant shall, at Defendant's expense: (i) stipulate to and agree with Plaintiffs on a non-party forensic vendor; (ii) jointly with Plaintiffs, submit to the Court a forensic protocol to accomplish the return and remediation of Plaintiffs' documents from the Defendant's possession (i.e., to permanently remove the documents from the Defendant's possession), and disclosure of communications that are potentially relevant to the factual allegations and claims contained within the Verified Complaint, with Defendant bearing all costs of the return and remediation; and (iii) submit sworn declarations from Defendant and the non-party forensic vendor attesting to the return and remediation of all of Plaintiffs' documents and potentially relevant communications.

      G.     Within 14 days of this Order, Plaintiff shall deposit a bond in the amount of $_____.

SO ORDERED this ____ day of _____, 2025.

_____
Hon. Thomas J. Rebull
Circuit Court Judge

4